UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

KATHALEEN LEHMAN,  )
  for her minor child, A.L.,  )
    )
    Plaintiff,  )
    )
    v.  )    CAUSE NO. 3:15-CV-00318-MGG
    )
CAROLYN W. COLVIN,  )
Acting Commissioner of Social Security,  )
    )
    Defendant.  )
    )

**OPINION AND ORDER**

Plaintiff Kathleen Lehman on behalf of her minor child, ("A.L.") filed her complaint in this Court seeking a reversal of the Social Security Commissioner's final decision denying her application for disability benefits under Title II of the Social Security Act. Alternately, Lehman seeks a remand for further consideration of her application. On January 11, 2016, Lehman filed her opening brief. Thereafter, on April 16, 2016, the Commissioner filed a responsive memorandum asking this Court to affirm the decision denying A.L. benefits. Lehman filed her reply brief on May 2, 2016. This Court may enter a ruling on this matter based on the parties' consent pursuant to 28 U.S.C. § 636(b)(1)(B) and 42 U.S.C. § 405(g).

**I.    PROCEDURE**

On July 22, 2004, Lehman applied for A.L.'s disability benefits. On May 22, 2008, A.L. was found disabled starting March 6, 2008. On February 16, 2012, during a continuing disability review pursuant to 20 C.F.R. § 404.1590, the Social Security Administration ("SSA") found that A.L. was no longer disabled.

On March 28, 2013, a disability hearing officer reviewed the agency's decision, and determined that A.L.'s health had improved and concluded that her disability ended on February 16, 2012. A.L. then requested a hearing before an administrative law judge ("ALJ").

On October 24, 2013, Lehman and A.L. appeared at an administrative hearing in Elkhart, Indiana. A.L. was not represented by counsel. The ALJ issued a decision on February 28, 2014, finding that A.L.'s disability ceased on February 16, 2012. The Appeals Council denied A.L.'s request for review. Through this action Lehman seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.     RELEVANT BACKGROUND

A.L. was born on September 9, 2000, making her seven years old when she was originally found disabled in May 2008. A.L. met Listing 112.11, the Listing for Attention Deficit Hyperactivity Disorder ("ADHD") and had speech and language delays. A.L. was thirteen years old at the time of the administrative hearing that resulted in the Agency's determination that her disability ended in 2012.

### A.     Plaintiff's Testimony

At the hearing before the ALJ, A.L. and Lehman testified regarding A.L.'s condition. A.L. testified that she takes medications for ADHD and bipolar disorder. A.L. further stated that she gets A's and B's in school but struggles with reading. Lehman testified that A.L. had to repeat the first grade and is currently in special education classes. Additionally, Lehman testified that A.L. has a hard time learning new things, has few friends, and rarely listens and responds to rules given by adults. Lehman stated that A.L. mostly does not complete homework assignments because she does not understand it. She also states that the ADHD and bipolar medications sometimes work on A.L., allowing her to focus on tasks, but sometimes they do not.

## B.    Medical Evidence

As part of A.L.'s disability review in 2013, Lehman provided the ALJ with medical evidence from February, 2012, to May, 2013. The evidence included the report from a psychological examination of A.L. conducted in 2012 by Carole Evans, the school's psychologist at Woodland Elementary School. Ms. Evans reported that A.L. did not have trouble getting along with other children and that she did not hesitate to join in play with a group of children. The psychological exam conducted by Ms. Evans noted objective observations of A.L. helping or assisting other students, and having a readily established rapport that was easily maintained, and as working "diligently" on all tasks presented. Ms. Evans also performed WISC-IV and Woodcock-Johnson-II cognitive tests on A.L. that showed cognitive ability within borderline range of intellectual functioning, with possibility of difficulty in keeping up with peers in situations that require age-appropriate thinking and reasoning ability and a low range ability to sustaining attention, concentration and ability to exert mental control. Ms. Evans summarized A.L.'s psychological exam by noting "mild" cognitive disability.

In addition, A.L.'s teachers completed multiple teacher questionnaires. In 2008, the teacher questionnaire submitted in support of A.L.'s original application for disability benefits, indicated that A.L. had prominent difficulty with acquiring information, task completion, interaction with others, and caring for herself. In 2012, A.L.'s teachers completed a questionnaire that reported a serious problem with acquiring and using information, no more than slight problems with task completion or interaction with others, and no problems with manipulating objects or caring for herself. Teachers reported that A.L. received more or less average grades, got along with her teachers and obtained honor roll "a few times."[DE 12 at 201–12, DE 12 at 272–74, DE 12 at 422–45]. In addition, A.L.'s teachers reported that A.L.

liked to please others, had great school attendance, enjoyed interaction with others, and was respectful, pleasant, and able to follow school rules when interacting with school personnel.

In January 2012, A.L. visited her treating physician, Dr. Kauffman, at Oaklawn Psychological Center ("Oaklawn"). Dr. Kauffman's report described A.L. as pleasant, re-directable, within normal limits as to speech, thought, content, judgment, memory, language, fund of knowledge, mood, and affect, and without increased risk as to impulsivity as to home or school. In April, 2012, a report indicated "much improved symptoms with all levels in the area of never or occasionally occurring." [DE 12 at 456–57]. The report further described A.L. as alert, oriented, retaining non-pressured speech, good articulation, logical thought process, intact memory, adequate attention, good concentration, high tolerance for distractibility, language within normal limits, and an adequate fund of knowledge with average intelligence. Also, the report stated that A.L. was normal as to mood, she was goal oriented, she was without psychomotor activity or medication side effects, and she was within normal limits as to appearance. The treating physician assigned a GAF score of 56.[1] In January 2012, A.L. achieved a full scale IQ score of 70 and a verbal comprehension score of 69.[2]

A.L. also returned to Oaklawn in May 2013. During that visit, the report noted few incidents of not paying attention to details, no new problems at school, and no behavioral issues. A.L. was found to be oriented, attentive, interactive, talkative, spontaneous, appropriate as to dress, age appropriate as to associations, normal as to mood, and without involuntary motor

---

[1] Children's Global Assessment Score (C-GAS) is a 100- point rating scale measuring psychological, social and school function for children aged 6-17. It was adapted from the Adult Global Assessment Scale and can be found in the *Diagnostic and Statistical Manual of Mental Disorders 4th Ed.*

[2] Intelligence Quotient (IQ) is a score obtained by dividing a person's mental age score, obtained by administering an intelligence test, by the person's chronological age, both expressed in terms of years and months. The resulting fraction is multiplied by 100 to obtain the IQ score. *National Council on Measurement in Education*. Verbal comprehension score measures a child's ability to access his vocabulary, express themselves in a meaningful manner, and apply reasoning skills to information presented verbally. *Id*.

movements or medication side effects. She once again was assigned a GAF score of 56. Oaklawn visits from July, August, and October 2013 reported similar findings.

A.L. also underwent three state agency requested consultative psychiatric examinations. Cognitive testing during her first consultation psychiatric exam in January 2012 by Dr. Wax, Ph.D. showed that A.L. was at the bottom of the borderline range of cognitive functioning. Dr. Wax noted diagnoses as to bipolar disorder and borderline intellectual functioning and assigned GAF score of 53. Dr. Wax stated that the claimant was "not at all symptomatic for ADHD, that A.L. retains borderline cognitive functioning, that she appears age-appropriate as to self-care, and that her socialization and recreation appear adequate." [DE 12 at 442–44].

A.L. underwent her second consultative psychiatric examination on February 15, 2012, by Stacia Hill, Ph.D. Dr. Hill opined that A.L. retained limitations related to attending and completing tasks, moving about and manipulating objects, and health and physical wellbeing.

Based on A.L.s third consultative psychiatric exam on November 1, 2012, Ann Lovko, Ph.D. concluded that A.L. was cooperative, alert, oriented, social, and has friends.

### C. The ALJ's Determination

After the hearing, the ALJ issued a written decision reflecting the following findings based on the three-step continuing disability review process prescribed in the SSA regulations. *See* 20 C.F.R. § 416.994a(b). At Step One, the ALJ must determine whether medical improvement had occurred in the impairments that the claimant had at the time of the most recent medical determination that she was disabled (*i.e.*, the comparison point decision ("CPD")). Medical improvement is any decrease in the medical severity of the impairment that was documented at the CPD. Here, the ALJ determined there was improvement and proceeded to Step Two.

5

At Step Two, the ALJ must determine if the claimant's CPD impairments now meet or medically equal the same Listing that it met or medically equaled at the time of the CPD. Here, the ALJ determined that since February 16, 2012, the impairments that A.L. had at the time of the CPD have not met or medically equaled the Listing at the time of the CPD.

At Step Three, the ALJ must determine if the claimant is currently disabled under the rules, considering all the impairments that the claimant has now, including any non-present or not considered at the CPD. The ALJ must determine whether the claimant has a medically determinable severe impairment or a combination of impairments that is severe. If the claimant has severe impairments the ALJ must determine if her impairments meets or medically equals the severity of any impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. If the ALJ finds that the claimant does not meet or medically equal a Listing, the ALJ must determine if the claimant's impairments functionally equal a Listing. If the ALJ determines the claimant does not functionally equal a Listing, the claimant's disability has ended. 20 C.F.R. § 416.994a(b)(3)(iii). At Step Three, the ALJ determined that A.L. was no longer disabled.

In reaching these overarching conclusions, the ALJ found that A.L.'s medically determinable impairments could reasonably be expected to produce the symptoms she alleged, but, that Lehman's statements concerning the intensity, persistence and the limiting effects of A.L.'s symptoms are not credible for the period since February 16, 2012. Lehman reported to Woodland Elementary School that A.L. suffered from a depressed mood, impulsivity, hyperactivity, temper tantrums, anxiety/worry, self-injurious behavior, and forgetfulness. The ALJ found inconsistencies between A.L's and Lehman's testimony. Thus the ALJ afforded little weight to Lehman's subjective complaints. The ALJ, noted marked limitation in A.L.'s ability to acquire and use information. The ALJ concluded that A.L. did not have an impairment at the

CPD and did not develop any additional impairments subsequent to the CPD to functionally equal any Listing.

## III. ANALYSIS

### A. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the Social Security Administration and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence is more than a mere scintilla but may be less than the weight of the evidence. *Sheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004).

A reviewing court is not to substitute its own opinion for that of the ALJ or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to her conclusion. *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Judicial review is limited to determining whether substantial evidence supports the ALJ's findings. *Schmidt v. Astrue*, 469 F.3d 833, 841 (7th Cir. 2007). In cases of child disability, the standard remains the same whether the review is requested for an initial disability determination pursuant to 20 C.F.R. § 416.202 or a disability review under 20 C.F.R. § 416.994 as requested here by Lehman and A.L.

### B. Issues for Review

A.L. seeks reversal and remand of the ALJ's decision, arguing that the ALJ's opinion is not supported by substantial evidence. In challenging the ALJ's decision, A.L. argues that the ALJ erred in not finding that A.L.'s impairments currently meet Listing 112.05(D) or (F) and that A.L. has met the Listing since the date her benefits were terminated. A.L. was not analyzed

7

under this Listing in the 2008 disability finding. Instead, the ALJ found A.L. disabled in 2008 under Listing 112.11. Listing 112.05(D) and (F) addresses mental and vocal impairments, which require significantly subaverage general intellectual functioning among other things. Specifically, A.L. contends evidence shows that A.L. possesses significantly subaverage intelligence with deficits in adaptive functioning.

### 1. The Listing

To determine whether A.L. remains disabled, the Commissioner has established a three-step analysis. *See* 20 C.F.R. § 416.994a(b). First, the Commissioner determines whether the impairments from which the claimant suffered as of the most recent CPD have improved compared to the date of the CPD. Second, if there has been improvement, the Commissioner determines whether the child's impairments meet or medically equal a Listing impairment despite any improvement. *Id.* at § 416.994a(b)(2). Lastly, if the claimant's impairments have improved and are no longer disabling, the Commissioner must determine whether all of the claimant's impairments, including any which she did not suffer as of the latest CPD, are nonetheless disabling.

The Listing describes impairments that are considered so severe that they are "presumptively disabling." *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999), *citing* 20 C.F.R. §§ 404.1525(a), 416.925(a). The claimant bears the burden of proving that her condition meets or equals a Listing impairment by showing that her condition satisfied all of the criteria of the listed impairment. *Maggard v. Apfel*, 416 F.3d 376, 389 (7th Cir. 1999).

Listing 112.05 can be met through six impairments, two of which are relevant to this case. The Listing can be met by showing that the child has a "valid, verbal performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an

additional and significant limitation of function." 20 C.F.R. Pt. 404, Subpart, P App. 1, § 112.05(D). Alternatively, the Listing can also be met by showing that the child has a "marked impairment in age-appropriate cognitive or communicative function" and "a physical or other mental impairment imposing an additional and significant limitation of function." *Id*. at § 112.05(F). In both scenarios, the claimant must first show significant subaverage intellectual functioning with deficits in adaptive functioning. *Id*. at § 112.05.

If there is a determination that a claimant's symptoms do not meet or medically equal any Listing, then the SSA will then determine whether the limitation "functionally equals a Listing." 20 C.F.R. § 416.926a(a). To determine whether a child's impairments functionally equal a Listing, the Commissioner will assess the functional limitations caused by a claimant's impairments. *Id.*. The Commissioner will consider how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)(vi). If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain, the impairment(s) functionally equals the Listing(s) and the child will be found disabled. 20 C.F.R. §416.926a(d).

For A.L.'s psychiatric impairments, the ALJ found that the record was without evidence of significant objective psychiatric symptoms that would support greater domain limitations as outlined in 20 C.F.R § 416.926a. The ALJ further noted that educational records and reports do not support greater domain limitations. Furthermore, the ALJ determined that A.L.'s mental health treatment since her CPD date encompassed no greater modalities of treatment than sporadic medication management visits. The ALJ determined this to be unsupportive of greater

9

domain limitations. The ALJ concluded that A.L. has less then marked limitations in her ability to attend and complete tasks, interact and relate with others, move and manipulate objects, and care for herself. The ALJ also concluded that A.L. has no limitation to her health and physical well-being. The ALJ did, however, note marked limitation in the domain of acquiring and using information that did not rise to the level of an extreme limitation. The ALJ finally noted that since February 16, 2012, A.L. has not had an impairment or combination of impairments that functionally equals the Listings. The ALJ specifically analyzed and discounted Listings 112.11, 112.08, and 112.02.

A.L. challenges the ALJ's decision because her opinion included no evaluation of whether her ADHD or bipolar disorder met, medically equaled or functionally equaled Listing 112.05. The Commissioner acknowledges that the ALJ's opinion does not address Listing 112.05, but contends that she was not required to do so. The Commissioner expounds that a disability through a 112.05 would have to be an intellectual disability. The Commissioner argues that at the hearing neither A.L. nor Lehman ever testified that A.L. had an intellectual disability. Similarly, the Commissioner contended that none of the treating or consulting psychologists indicated that A.L. had an intellectual disability.

When an ALJ concludes that claimant does not meet a Listing, the ALJ must articulate the bases for his conclusions. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) ("By failing to discuss the evidence in light of Listing 112.05's analytical framework, the ALJ has left this court with grave reservations as to whether his factual assessment addressed adequately the criteria of the listing."). While the Commissioner submits that the evidence of the record demonstrates that A.L. could not satisfy Listing 112.05, this Court is "hard pressed to find a precise conclusion either implicitly or explicitly in the ALJ's opinion." *Id.* (citing *Steele v.*

10

*Barnhart*, 290 F.3d 936, 941); *see also Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996).

The Commissioner argues that when there is no reason for the ALJ to consider a certain Listing, then it is expected the ALJ would not consider the Listing when determining if A.L. was disabled. *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 844 (6th Cir. 2005) ("Nothing in the record indicates that the ALJ should have looked at 11.02, 11.03, 11.04."). This principle, however, is inapplicable to the circumstances in this case. In *Pasco*, the ALJ noted that the objective medical evidence suggested a more appropriate evaluation under a different Listing. In this case, however, there is evidence suggesting that an evaluation under Listing 112.05 may be appropriate. A.L. achieved a full scale IQ score of 70, a necessary element to Listing 112.05(D). However, the Commissioner's argument that the ALJ was not required to analyze A.L.'s impairments in relation to Listing 112.05 is misplaced. Here, the ALJ did consider listings such as 112.11, 112.08, and 112.02, but the ALJ did not discuss or even reference Listing 112.05. Without meaningful analysis from the ALJ regarding this evidence, this Court cannot engage in meaningful judicial review of the ALJ's decision. The ALJ failed to articulate adequately the bases for her conclusions when she found that A.L. impairments did not meet the Listings. Without establishing an adequate foundation, the ALJ could not build a logical bridge between the evidence in the record and her conclusions regarding A.L.'s continuing disability. *See Haynes*, 416 F.3d at 626.

    2.    **Harmless Error**

The Commissioner adds, though, that even if it were error for the ALJ not to analyze Listing 112.05, the error was harmless. An error in a Social Security determination is harmless when, considering the evidence in the record, a court "can predict with great confidence what the

result on remand will be." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).

The Commissioner reasons that because A.L. did not present evidence in the record to establish that A.L. met any subsection of Listing 112.05, any error was harmless. The Commissioner concedes that A.L. met some of the criteria required by Listings 112.05(D) and (F), including having a valid full IQ score of 70, a mental impairment that imposed an additional and significant limitation function, and a marked impairment in cognitive function.

Despite these concessions, the Commissioner argues that A.L.'s impairments do not meet or equal Listing 112.05(D) or (F) because she does not have the required deficits in adaptive functioning. To meet the Listing 112.05 requirement for deficits in adaptive functioning, a claimant must be "sufficiently impaired that ongoing support is needed in order for the person to perform adequately in one or more life settings at school . . . or in the community." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 5TH ED., *Intellectual Disability (Intellectual Developmental Disorder)* (Am. Psychiatric Ass'n, 2016).

A.L., on the other hand, argues that she established deficits in her adaptive functioning by showing "numerous deficits in the conceptual domain." [DE 18 at 8]. For instance, A.L. cites the ALJ's determination that she has a marked limitation in acquiring and using information to substantiate the claim. A.L. also cites reports from psychological exams at Oaklawn that showed she was behind in grade level math, that she struggled to understand vocabulary and written material, that she had difficulty expressing herself, that she struggled with memory, and that she had deficiencies in cognitive and adaptive behavior. The Commissioner argues that these are not the type of deficiencies that were anticipated by the Listing. The Commissioner then moves on to note that A.L. has average grades, that her mother testified that A.L. was on the honor roll a

few times, that A.L. was able to read, knew the days of the week and months of the year, and that both state agency psychological consultants opined that A.L. had less than marked limitation in acquiring and using information. Notably, however, A.L. is enrolled in special education classes, and the Commissioner did not consider the impact that a special education curriculum would have on the significance of A.L.'s grades or other classroom achievements.

Based on these arguments and the evidence cited by the parties, the Court cannot determine with great confidence what the result will be on remand. *See McKinzey*, 641 F.3d at 892. Evaluating A.L. under Listing 112.05 may very well lead the ALJ to determine that A.L. is disabled, changing the outcome of the Commissioner's decision on remand. Without meaningful analysis from the ALJ regarding Listing 112.05, the parties have been left to dispute before this Court the significance of A.L.'s impairments in light of Listing 112.05. Moreover, the Court is left with a record that does not permit it to engage in the meaningful, albeit deferential, review that the statute mandates. Therefore, the ALJ's analyze whether A.L.'s impairments met or equaled Listing 112.05 cannot constitute harmless error.

## IV. CONCLUSION

For the above reasons, this Court concludes that the ALJ erred in not analyzing Listing 112.05. Therefore, A.L's motion for reversal or remand is **GRANTED**. [DE 18]. This Court **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDS** for further proceedings consistent with this opinion. The Clerk is instructed to term the case and enter judgment in favor of Lehman.

**SO ORDERED**

Dated this 31st day of January, 2017

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge